James W. HOOVER, Plaintiff-Appellant,

v.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, an Alabama Corporation, Defendant,**

**USX Corporation, A Delaware Corp., Defendant-Appellee.**

Nos. 87–7494, 87–7578.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1988.

James L. North, J. Timothy Francis, William R. Lewis, Pate, Lewis & Lloyd, P.A., William B. Lloyd, Birmingham, Ala., for plaintiff-appellant.

William G. Somerville, Jr., Lange, Simpson, Robinson & Somerville, Lawrence B. Clark, Birmingham, Ala., for Blue Cross.

James T. Carney, USX Corp., Pittsburgh, Pa., for USX Corp.

Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

CLARK, Circuit Judge:

In this case the named plaintiff, James W. Hoover, brought a class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). The complaint also contained some state law claims. On behalf of the class described in the complaint, Hoover sought recovery of benefits under the terms of certain employee medical insurance plans and damages for alleged breaches of fiduciary duty by the named defendants, Blue Cross and Blue Shield of Alabama, and USX Corporation (Hoover's employer). Before ruling on the question of class certification, the district court granted motions for summary judgment filed by both named defendants. Hoover has appealed the legal rulings on which the district court based its decision, as well as rulings which denied Hoover the opportunity to join additional defendants and assert additional claims.[1]

There is no dispute as to the essential facts. The focus of Hoover's complaint is the co-payment provision of the USX plan under which Hoover is insured:

If a condition of illness or injury requires you to be admitted for treatment as an inpatient to a Participating Hospi-

tal of a Blue Cross Plan, benefits will be provided ... for all covered services provided and billed by the hospital which are necessary to diagnose and/or treat your condition, ... except that you will be required to pay a Hospital Inpatient Deductible, ... and 20% of the hospital's charges in excess of the deductible.

Through a communication with Blue Cross, Hoover discovered that Blue Cross has contracts with certain "hospitals and other providers in Alabama, under which Blue Cross reimburses the providers on the basis of the lesser of the actual billed charges of the hospital and its 'audited' costs. In other words, Blue Cross gets a 'discount' from some providers." District Court Opinion, Record Vol. I, Tab 69 at 2. When Blue Cross reimburses hospitals with which it has such arrangements, the result is that an insured's co-payment for his or her hospitalization exceeds twenty percent of the total dollar cost (over the relevant deductible). Hoover contends that these arrangements contravene the language of the co-payment provision and that he and similarly situated insureds are entitled to share in the contractual discounts negotiated by Blue Cross by having their co-payments limited to twenty percent of the total amount paid to the relevant health care provider. The parties agree that resolution of these issues depends on a construction of the following language in the co-payment provision: "20% of the hospital's charges."

■ The parties also agree that the law governing this case is supplied by ERISA.[2]

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Originally, there was an additional named plaintiff, Charles M. George, who sought to represent a sub-class described in the amended complaint. George filed a motion to dismiss his appeal; this motion was granted by our clerk of court pursuant to Fed.R.App.P. 42 and 11th Cir. R. 42–1(a). We therefore consider only those aspects of the lawsuit concerning Hoover.

2. ERISA's coverage extends to

... any *employee benefit plan* if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

29 U.S.C. § 1003(a) (emphasis added). "[E]mployee benefit plan" is defined under the Act to include any "employee welfare benefit plan." 29 U.S.C. § 1002(3). And "employee welfare benefit plan" is in turn defined to include "any plan, fund, or program which ... was established or is maintained for the purpose of providing for its participants ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident dis-

ERISA provides that it "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan described in section 1003(a)." 29 U.S.C. § 1144(a). The Supreme Court has held that the civil enforcement mechanism provided by the Act, 29 U.S.C. § 1132, provides the exclusive remedy for beneficiaries of a section 1003(a) benefit plan who believe that such a plan is not being administered in accordance with its terms or the provisions of the Act. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 1549 (1987); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).[3] Accordingly, there was no legal basis for Hoover's state law claims.

Those charged with the administration of a section 1003(a) benefit plan are termed 'fiduciaries' under ERISA. The duties of a plan fiduciary are described in 29 U.S.C. § 1104(a)(1), which provides, in relevant part, that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries ...
>
> ....
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ... [and]
>
> ....
>
> (D) in accordance with the documents and instruments governing the plan....

Blue Cross conceded before the district court that it is a "fiduciary" subject to these provisions.

It is well established that the actions of plan fiduciaries or administrators must be sustained as a matter of law unless a plaintiff can prove that such actions are arbitrary or capricious. *See, e.g., Sharron v. Amalgamated Insurance Agency Services, Inc.*, 704 F.2d 562, 565 (11th Cir. 1983); *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir.) (judicial review of fiduciary actions is "highly deferential"), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985). This rule clearly applies to the interpretation and implementation of a covered plan by a plan fiduciary. *See Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 824 (11th Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984). In light of these principles, the parties agree that the defendants' interpretation and implementation of the co-payment clause contained in the USX plan is to be sustained as a matter of law unless the Hoover can demonstrate that the defendants' reading of the plan is arbitrary and capricious.

We have previously isolated two factors which are relevant in determining whether a plan administrator has arbitrarily and capriciously interpreted a covered plan: the uniformity of a plan administrator's construction of a disputed provision; and the reasonableness of the administrator's construction. *See Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1498 (11th Cir.1987).[4] It is also proper to consider a plan administrator's good faith in deciding whether his or her conduct is arbitrary and capricious. *Id.*

Hoover does not contend that Blue Cross's construction of the provision has been anything less than uniform. He concentrates instead on the reasonableness of the construction. In rejecting this and other arguments, the district court relied on the "uncontradicted affidavit" of a USX official, James Short, who was charged

---

ability, death or unemployment ... benefits...." 29 U.S.C. § 1002(1)(A).

**3.** An exception to this rule arises where the saving clauses of ERISA's express pre-emption provisions are operative. *See* 29 U.S.C. § 1144(b).

**4.** In evaluating other administrator actions, we also consider whether the action was reasonably taken to prevent unanticipated costs that may limit the resources of a covered plan. *See Griffis*, 723 F.2d at 825; *Harris*, 809 F.2d at 1498.

with drafting the plan under which Hoover is insured. According to Mr. Short, the plan

> was written to provide that the employees would be responsible for 20% of the "charges" made by the hospital and that the employer would be responsible for the balance due the hospital as opposed to providing that the employer would be responsible for 80% of the hospital charges, or as opposed to providing that the employee would be responsible for 20% of the cost of hospitalization.
>
> . . . .
>
> ... [I]t would not be practical under a multi-state insurance plan to operate a co-payment system based on net cost (after discounts) when discount arrangements vary from plan to plan, and from hospital to hospital at certain plans. Discounts are even determined annually at certain plans with the amount of discount unknown at the time hospital bills are paid. This would have made it impossible for many hospitals to collect the 20% co-payments from employees which we considered desirable....

Hoover presented no evidence to rebut the content of Mr. Short's affidavit, and the district court found that the practice of obtaining discounts was reasonable as a matter of law. The court also concluded that

> [t]here is no language in [the plan] legitimately susceptible to being interpreted as a promise to participants that USX, or any administrator or sub-administrator of the plan, will pay a fixed percentage of the *actual* or *usual* charges by a provider of medical services, without obtaining any discount. Any conclusion is without support in the only documentary evidence and constitutes no more than wishful thinking.

District Court Opinion, Record Vol. I, Tab 69 at 3.

■ Hoover contends that the defendants' interpretation of the plan is unreasonable because the words "cost" and "charge" are interchangeable and that a beneficiary familiar with the co-payment provision would fully expect that the twen-

ty percent figure refers the actual, total amount of money a hospital would receive for its care of that beneficiary. Hoover's argument fails to acknowledge that, under ERISA, the subjective expectations of a plan beneficiary do not provide the proper measure of a plan administrator's interpretation of a disputed plan provision. If the co-payment provision is at least ambiguous, and reasonably susceptible to the interpretation given by the defendants, we must find, as a matter of law, this interpretation satisfies the arbitrary and capricious standard. *See Cook v. Pension Plan for Salaried Employees*, 801 F.2d 865, 871 (6th Cir.1986) (accepting plan administrator's reasoned explanation concerning application of ambiguous provision); *Edwards v. Wilkes-Barre Publishing Co. Pension Trust*, 757 F.2d 52, 57 (3d Cir.) (even where beneficiary's reading of plan language is plausible, plan fiduciary's adoption of reasonable alternative is conclusive), *cert. denied*, 474 U.S. 483, 106 S.Ct. 130, 88 L.Ed. 2d 104 (1985).

■ As we noted above, the district court took a less than charitable view of Hoover's reading of the plan, finding no support for it whatsoever. Hoover took the position that the defendants' reading of the plan was unreasonable as a matter of law. But he presented no evidence to counter the interpretation offered by the defendants. On appeal, he also argues that the defendants have acted in bad faith and that the arbitrary and capricious standard of review is therefore not satisfied. Hoover points us to no record evidence, however, that would reasonably support an inference of bad faith. Instead, he contends that a finding of bad faith should be inferred from the manner in which the defendants interpreted the plan and their failure to notify beneficiaries of the discount arrangements which Blue Cross has with various hospitals. If Hoover is suggesting that there remains a factual question of good faith that was sufficient to preclude entry of summary judgment against him, he is plainly wrong. Under the circumstances, Hoover was required to "go beyond the pleadings and by [his] own affida-

vits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate *specific facts* showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis added).[5]

Given that there are no material issues of fact which are yet to be resolved, and because we conclude that the defendants' reading of the disputed provision is at least reasonable, we hold that the defendants were entitled to summary judgment.[6]

■ We consider one last argument made by Hoover: that district court erred in refusing to permit Hoover to join additional defendants and to assert additional claims. On April 9, 1987, Hoover filed a motion for leave to join additional parties. The district court did not rule on the motion until July 13. In the interim period, on June 15, Hoover filed, without seeking leave of court, a self-styled second amended complaint, which listed as defendants those parties Hoover had sought to join in his April 9 motion. On June 19 and June 24, USX and Blue Cross moved respectively to strike Hoover's second amended complaint. In denying the motion to join additional parties, the district court said that the effort to join these parties was "an obvious attempt to avoid ... USX's motion for summary judgment *after* that motion had been filed and after [Hoover] should have known of any claim against [them]." Rec. Vol. I, Tab 50 at 2 (emphasis added). The district court's statement cannot be entirely correct since USX's motion for summary judgment was filed on May 26. This error was harmless, however, because the legal claims that Hoover would have asserted against the additional parties on

---

5. After filing his notice of appeal, Hoover filed a motion pursuant to Fed.R.App.P. 10(e), asking the district court to supplement the record on appeal with an affidavit executed by Hoover. In his motion, Hoover alleged that his affidavit was "filed" in opposition to USX's motion for summary judgment. He further alleged that "[t]hrough error or accident, this affidavit" was "omitted from the record transmitted by the clerk's office [of the Northern District of Alabama] to the Eleventh Circuit Court of Appeals." The district court denied the motion, finding that Hoover's averment that he "filed" the affidavit was "erroneous." The court also explained that Hoover's affidavit could not be considered part of the record on appeal because such record "consists [only] of those items which where either 'filed' or formally presented by the parties to the court with a court reporter present." The court further explained that where an item is not filed or presented to a district court through inadvertence, such item can become part of the record only if it is actually part of the proceedings before that district court. Because Hoover's affidavit was not invoked in Hoover's opposition to USX's motion for summary judgment, and because Hoover filed no list of items upon which he relied in opposing Blue Cross's motion for summary judgment, the court concluded that the affidavit was not, and could not become, part of the record on appeal. *Id.*

Prior to oral argument before this court, Hoover filed a new Rule 10(e) motion to supplement the appellate record with his affidavit. This motion was carried with the case. We have now considered the merits of his motion, and the opposition to the motion filed by both defendants. The motion must be denied.

As the district court clearly understood, the purpose of Rule 10(e) is to ensure that the record on appeal "truly discloses what occurred in the district court." Fed.R.App.P. 10(e); *see also United States v. Smith,* 493 F.2d 906, 907 (5th Cir.1974) ("Rule 10(e) exists to allow the ... court to conform the record to what happened, not to what did not."). Hoover has given us no reason to doubt the accuracy of the district court's statement that Hoover did not in fact rely on the affidavit in opposing the defendants' motions for summary judgment. Because the record as transmitted thus discloses the content of the proceedings which actually took place before the district court, Hoover is not now entitled to supplement the record with this material on appeal. Affidavits outside the record cannot be considered on appeal. *Scarborough v. Kellum,* 525 F.2d 931, 933 n. 4 (5th Cir.1976).

6. Before the district court ruled on the legal merits of Hoover's complaint with regard to Blue Cross, it had already granted USX's motion for summary judgment on the ground that Hoover had presented no evidence to support its claim. The court also concluded that it should not have "allowed [Hoover] to add USX as a defendant in the first place" because any claim against the Corporation "was and is entirely separate and distinct from the original claim brought by Blue Cross...." Hoover has challenged this ruling but we have no occasion to consider it because we have concluded that even as a proper defendant, USX was entitled to summary judgment as to the legal merits of Hoover's claim.

*April 9* are those we have addressed here. *Cf. Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (futility of proposed amended pleading is valid ground for denying leave to amend).

As for the additional claims asserted in Hoover's second amended complaint, it is clear that the district court did not consider itself obliged to consider them since the plaintiff did not move for leave of court to file such a pleading under Fed.R. Civ.P. 15(a). The court indicated its prospective intent to deny any such motion since this pleading would have added new theories of liability. Given the district court's apparent view that Hoover's delay in asserting the additional claims was without excuse,[7] its resolution of this issue was consistent with general principles applicable to Rule 15. As Wright and Miller explain,

> In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, *it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval.* However, some courts have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend *would have been granted had it been sought* and when it does not appear that any of the parties will be prejudiced by allowing the change. Permitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of rule 15(a) and the general desirability of minimizing needless formalities.

6 *Federal Practice & Procedure* § 1485 at 421 (1971) (emphasis added) (footnotes omitted). Here, the district court acted properly in treating Hoover's supplemental pleading as a nullity, particularly since it was inclined to deny any motion for leave to amend that Hoover might have filed.

For the reasons expressed in this opinion, the district court's judgment is AFFIRMED.

---

7. We base our reading of the district court's order on the cases it cited in support of its statement that any motion for leave to amend under Rule 15(a) was likely to be denied. *See National Service Industries, Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir.1982) (no abuse of discretion to deny leave to amend pleading where party knew of facts supporting proposed amendment at when it filed original pleading); *Ferrell v. Busbee*, 91 F.R.D. 225, 231 (N.D.Ga. 1981) ("Plaintiff had to know of the facts upon which the amendment was based at the time the complaint was filed.").