724 F.Supp. 732 (1989)
ST. MARY MEDICAL CENTER, a non-profit corporation, Plaintiff,
v.
Nino CRISTIANO, et al., Defendants.
Nino CRISTIANO, et al., Plaintiffs,
v.
ARROW COACH LINES, INC., et al., Defendants.
Nos. CV87-7837-PAR, CV88-0822-PAR.
United States District Court, C.D. California.
August 31, 1989.
*733 *734 Judith A. Rasmussen, Vincent Carroll, Kilpatrick, Clayton, Meyer & Madden, Long Beach, Cal., for plaintiff St. Mary Medical Center.
Raymond T. Kaiser, DeBiaso, Palmer, Lopez & Kaiser, Long Beach, Cal., for plaintiffs Nino and Salli Cristiano.
Wendy M. Brownstein, Hawkins, Schnabel & Lindahl, Los Angeles, Cal., for defendant Hartford Life & Acc. Ins. Co.
Jean M. Lawler, Edmund G. Farrell, III, Murchison & Cummings, Los Angeles, Cal., for defendant Arrow Coach Lines, Inc.
Jack T. Holland, Hefner, Stark & Morois, Sacramento, Cal., for defendant U.S. Administrators.

MEMORANDUM OF DECISION AND ORDER
RYMER, Circuit Judge (sitting by designation).
This is a consolidated action arising out of medical expenses incurred by Nino Cristiano ("Nino") and Salli Cristiano ("Salli"), while their daughter, Jaclyn Cristiano ("Jaclyn"), was in the care of St. Mary Medical Center ("St. Mary's"). St. Mary's filed suit in the Superior Court of the State of California on October 9, 1987, naming as defendants the Cristianos, Arrow Coach Lines, Inc. ("Arrow"), the Hartford Insurance Co. ("Hartford"), Met/USA Insurance Trust ("Met/USA"), U.S. Administrators, Inc. ("U.S. Administrators"), and Onecard International, Inc. ("Onecard").[1] The Cristianos filed suit in the Superior Court of the State of California on January 5, 1988, naming as defendants Arrow, the Hartford, Met/USA, and U.S. Administrators. On November 20, 1987, St. Mary's action was removed to this court; the Cristianos' action was removed on February 17, 1988. Removal jurisdiction is premised on the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. The actions have since been consolidated.
The basic facts of the case are as follows: Salli Cristiano was employed by Arrow Coach Lines from February of 1986 until she resigned in July of 1987. While employed at Arrow, she enrolled in an employee health plan issued by the Hartford and administered by U.S. Administrators. Premiums were paid by Arrow. At the time of her enrollment, Salli declined dependent coverage for her husband, Nino. On January 6, 1987, Salli gave birth, two months premature, to a baby daughter, Jaclyn. Later that day, Jaclyn was transferred from Long Beach, where she was born, to St. Mary's Medical Center, for treatment of complications attendant to her birth. In late January 1987, Salli sought to add Jaclyn as a dependent on her health plan. In early March 1987, Salli received notice from U.S. Administrators that, because she had waived dependent coverage when she originally enrolled, she would have to submit proof of Jaclyn's insurability. In mid-April 1987, Salli learned that the Hartford had declined to cover Jaclyn on the grounds that her premature birth had created an unacceptable risk under its *735 underwriting guidelines. As yet, St. Mary's has received no payment for the medical bills outstanding for Jaclyn's treatment.
St. Mary's complaint asserts claims against the Hartford, Met/USA and U.S. Administrators for: (1) detrimental reliance, (2) negligent misrepresentation, and (3) breach of contract on a third party beneficiary theory; and against Arrow for negligence.[2] The Cristianos allege claims against Arrow for: (1) breach of contract, (2) negligence, and (3) misrepresentation; against U.S. Administrators, Met/USA, and the Hartford for tortious breach of statutory duty; and against Arrow, U.S. Administrators, Met/USA, and the Hartford for ERISA civil enforcement. Both complaints raise essentially the same central issue: whether Salli Cristiano was entitled to add dependent coverage to her group medical policy at the time of her daughter's birth without proof of insurability.
Motions for summary judgment were filed by the Hartford on November 29, 1988, by Arrow on November 30, 1988, by St. Mary's (joined by the Cristianos) on December 1, 1988, and by U.S. Administrators on December 2, 1988. Each party has opposed the cross-motions against it. On January 23, 1989, the court issued a tentative ruling on the motions, heard argument, and took the matter under submission. On March 1, 1989, the court issued an order requesting the parties to submit further briefing on the applicability to this case of the Supreme Court's opinion in Firestone Tire & Rubber Co. v. Bruch, ___ U.S. ___, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). All of the parties timely filed responses to the court's request. On June 9, 1989, the court again heard argument on a number of issues raised in the motions. For the reasons that follow, the court now: (1) grants the motions for summary judgment brought by Arrow, U.S. Administrators, Met/USA, and the Hartford on St. Mary's claims for detrimental reliance, negligent misrepresentation, breach of contract and breach of contract on a third party beneficiary theory and on the Cristianos' claims for ERISA benefits and tortious breach of statutory duty; and (2) denies the motions for summary judgment brought by St. Mary's and the Cristianos.

Uncontroverted Facts
1. Salli Cristiano became employed by Arrow, a charter bus company, on February 10, 1986.
2. At the time of her employment, Salli met with Markey Daley ("Daley"), an employee of Arrow, to "take care of the normal things you do when you get a new job." Exhibit 1 to Hartford's Memorandum in Support of Motion for Summary Judgment at 35.
3. At the time of Salli's employment, the Hartford had issued a group health insurance policy to the Trustee of the MET/USA Trust, of which Arrow is a participant employer. MET/USA's Plan was administered by U.S. Administrators. Premiums were paid by Arrow. It is an ERISA Plan. The Hartford policy provided specified health insurance pursuant to a Group Insurance Plan booklet.
4. The Plan provided, in relevant part:
When You Are Eligible
. . . . .
2. the first day of the calendar month which occurs on or next follows completion of the Eligibility Waiting Period stated in the Schedule of Insurance
. . . . .
When You are Insured  Contributory Insurance
Your coverage will start on the earliest of these dates:
1. the date you become eligible, if you enroll on or before that date; or
2. the date you enroll, if you do so within 31 days after you are eligible
. . . . .
When You Are Eligible for Dependents Coverage

*736 You will be eligible for Dependents Coverage on the later of:
1. the date you become eligible for Insured Persons Coverage; or
2. the first day of the month which occurs on or next follows the date you acquire a Dependent.
. . . . .
When You Are Insured  Contributory Insurance
Your Dependents will become Covered Persons on the first to occur of:
1. the date you become eligible for Dependent coverage if you enroll on or before that date; or
2. the date you enroll, if you do so within 31 days after you are eligible; or
3. with respect to each Dependent, the date The Hartford approves evidence of Dependent's insurability. Evidence of insurability is required if you enroll more than 31 days after you become eligible. Such evidence must be furnished for each Dependent at your expense.
4. If you acquire an additional Dependent after the effective date of your Dependent's coverage, then such Dependent will be a Covered Person on the date you acquire him.
However, in no event will Dependents Coverage become effective before the date your Personal Coverage is effective. Additionally, all of the above dates are subject to the following section entitled "Deferred Effective Date".
. . . . .
Deferred Effective Date
With respect to Major Medical Expense Benefits  if a Dependent, other than a newborn child, is confined at home, in a Hospital, or elsewhere because of injury or sickness on the date his insurance would have become effective, or would have been increased, his effective date will be deferred....
Exhibits A and B to Cristiano Memorandum in Support of Opposition to Defendants' Motion for Summary Judgment.
5. In their initial meeting, Salli and Daley did not discuss the employee health plan in any detail. Rather, Daley told Salli to come back to talk about the plan once the eligibility period had passed. Id. at 36.
6. Salli came back to talk to Daley on her own initiative approximately one week before the eligibility period was concluded. Id. at 39.
7. At that meeting, Daley gave Salli various forms relating to Arrow's employee health benefit plan and spoke to her about the decision whether to add Salli's husband, Nino, as a dependent under the plan. Id. at 40. However, since Salli did not "have any plans to have children at that point," it appears that Daley did not discuss the procedures for adding a baby as a dependent. Id. at 43.
8. After receiving a copy from Daley, Salli read the health plan "benefits book," apparently including the provisions of the plan dealing with the procedure for adding a baby as a dependent. Id. at 45.
9. Salli and Nino discussed the plan and elected not to obtain coverage for Nino.
10. On May 1, 1986, Salli became insured under the plan. At the same time, she executed a waiver of dependent coverage. Walker Declaration, Exhibit 1. The waiver stated in part, "I understand that I will be required to provide proof of insurability for myself and/or my dependents, at my expense."
11. At some point before she found out that she was pregnant, Salli asked Daley how she should "go about adding on somebody in the event [she] got pregnant," and Daley "explained [to Salli that she would have] 31 days to enroll the child on the plan, it is a matter of filling out a form, sending it in through [Daley] at Arrow, and that would be the end of it." Id. at 53.
12. In June 1986, Salli became pregnant.
13. At some point, Salli received a letter from U.S. Administrators telling her not to "forget within 31 days after your child is born to fill out the form and enroll her in the program." Id. at 56.
14. At about the same time, Salli also spoke to Sidney Schaeffer ("Schaeffer"), an employee of U.S. Administrators, who told *737 her that "after the child is born you have 31 days, you go to your employer, you fill out a form, and that is the end of it." Salli did not discuss with Schaeffer the fact that she did not already have coverage for her husband at that time. Id. at 57.
15. On January 6, 1987, Salli gave birth to Jaclyn Cristiano at Long Beach Community Hospital. Jaclyn was born two months premature and had serious health problems, including a T.E. fistula.
16. On the same day, Jaclyn was transferred to the neo-natal unit at St. Mary's Medical Center, where she incurred substantial hospitalization, physician, and supply expenses until her discharge on March 25, 1987.
17. A form from Onecard International dated January 12, 1987 and apparently related to verification of Jaclyn Cristiano's account said under the heading "Basic Coverage" "Comments: Child must be enrolled within 30 days in order to get benefits." Deposition of Jeff Schoonover, patient account manager at St. Mary's, at 53.
18. On January 24, 1987, Salli submitted an enrollment card and application of coverage for both her husband and her baby daughter. Salli Cristiano Depo., Exhibit D to St. Mary's Memorandum in Support of Motion for Summary Judgment at 70.
19. On March 2, 1987 U.S. Administrators sent a form letter to Arrow's Jaime E. Cifuentes advising him that it would need a group change of status card, a medical history form, and authorization before it could begin processing the addition of Jaclyn to the plan. The reason for this request was that "more than thirty-one (31) days ha[d] elapsed between the date the dependent was acquired and/or became eligible, and the date [U.S. Administrators had] received AN ENROLLMENT CARD." Exhibit E to Cristianos' Opposition.
20. On March 16, 1987, U.S. Administrators forwarded Salli's original enrollment card along with her second one to Vince Tobin of Hartford with a request that he "advise ... as to how this should be handled." Ex. K to Cristianos' Opposition. Handwritten notes indicated that Hartford's Tobin "advised USA that adding depn. is subject to late entrant requirements. Their 3/2/87 form letter is correct approach."
21. On March 24, 1987 Salli received a letter from U.S. Administrators explaining that she had submitted incorrect forms and, because she had waived dependent coverage when she originally signed up, would need to submit a medical history form to be approved by the underwriting department before the coverage requested could go into effect. Cristiano Depo., Exhibit G.
22. Also on March 24, 1987, Watson wrote to Salli informing her that "[w]hen you have one or more dependents all must be insurable in order for coverage to go into effect." See Exhibit F to St. Mary's Memorandum in Support of Motion for Summary Judgment.
23. On March 30, 1987, Salli returned the requested information to U.S. Administrators.
24. On April 2, 1987, that information was forwarded by U.S. Administrators to the Hartford.
25. On April 5, 1987, Jaclyn returned to St. Mary's, and remained there until April 14, 1987.
26. On April 16, 1987 the Hartford declined coverage on the stated ground that Jaclyn's premature birth created an unacceptable risk under its underwriting guidelines.
27. On April 16, 1987 U.S. Administrators wrote to Salli informing her that dependent coverage for Jaclyn had been denied "due to [Jaclyn'] premature birth and build as an unacceptable risk per our underwriting guidelines." The letter also said, "[s]hould you have any pertinent information that might affect our decision please submit to our office for review." See Exhibit H to St. Mary's Memorandum.
28. According to Thomas L. Snow, III, chief underwriter for the Hartford, Jaclyn's application was denied because her premature birth had made her an unacceptable risk under Hartford's underwriting *738 guidelines. Declaration of Thomas Snow in Support of Hartford's Motion for Summary Judgment.
29. Robert S. Dubiel, Division Manager for the Functional Health Unit in the home office of Hartford, testified that standard practice when issuing group health insurance coverage is to allow unrestricted enrollment for some stated period of time (usually thirty days), but to restrict late entrance into the group to only those persons who can demonstrate that they are in good health. Declaration of Robert Dubiel in Support of Hartford's Motion for Summary Judgment.
30. The Cristianos never spoke with any representative of the Hartford.
31. The total amount of the Cristianos' bills at St. Mary's was $182,819.76.
32. Article IV, Section 1 of the Agreement and Declaration of Trust between U.S. Administrators and the First National Bank of Jackson, Mississippi provides in part that:
USA shall construe this Agreement and determine all questions of interpretation, policy or administration of this Agreement and the plans of the employers, and may correct any defect, supply any omission or reconcile any inconsistency in such manner and to such extent as it shall deem necessary or advisable to carry out the purposes hereof.
Exhibit 11 to Hartford's Supplemental Points and Authorities at 22.
33. Article VIII, Section 4 of that Agreement provides:
USA shall construe this Agreement and determine all questions of interpreation [sic], policy or administration of this Agreement and the plans of the employers, and may correct any defect, supply any omission or reconcile any inconsistency in such a manner and to such extent as it shall deem necessary or advisable to carry out the purposes hereof.
Id. at 26.
34. A MET/USA INSURANCE TRUST ADMINISTRATIVE KIT states:
When to Use the Medical History Form:
Any case where the employee and/or dependents whish [sic] to acquire group coverage:
1. And did not do so during the "initial enrollment period." Newly acquired dependents (whether new spouse, newborn or adopted child) also have an initial enrollment period applicable to them as outlined in your Group Plan Booklet (Refer to your Plan Booklet for further definitions of "dependent").
Ex. J. to Cristianos' Opposition.
35. Arrow did not underwrite or administer the policy, or make any decisions regarding payment of dependent coverage claims. Affidavit of Michael Collins, Arrow's General Manager. Ex. A to Arrow's Motion for Summary Judgment at ¶¶ 2-3.

Facts in Dispute But Not Material to Resolution of These Motions
1. Whether Salli was given adequate notice of her right to appeal.
2. Whether Salli was led to believe that she could add Jaclyn as a dependent without proof of Jaclyn's insurability.

Cross-Motions for Summary Judgment

I. Standard
Fed.R.Civ.P. 56(b) provides that a moving party may move for summary judgment if the pleadings and supporting material "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment in favor of the moving party is therefore appropriate if the opposing party fails to: 1) produce evidence to support the existence of all essential elements on which the opposing party bears the burden of proof; and 2) show that all disputes about material facts or necessary inferences from the facts could reasonably be resolved in favor of either party by the trier of fact. See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Matsushita v. Zenith Radio, 475 *739 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). See generally Schwarzer, Summary Judgment and Case Management, 56 Antitrust L.J. 213, 218 (1986) ("undisputed evidence submitted by [an opposing party] may be insufficient to sustain a verdict which turns on a mixed question of law and fact under the applicable substantive law"). The essential inquiry is "whether the evidence is so one-sided that one party must prevail as a matter of law," Anderson; and while evidence of the non-moving party will be believed, only justifiable inferences will be drawn in that party' favor. Anderson; Matsushita. Finally, this matter will be tried to the court; if a trial will serve no useful purpose in resolving credibility and the dispute is essentially over ultimate facts, summary judgment is appropriate. See Schwarzer, Summary Judgment Under Federal Rules, 99 F.R.D. 465, 476-480.

II. Plaintiffs' Claims

A. St. Mary's Claims for Detrimental Reliance and for Negligent Misrepresentation Based on Alleged Representations of Coverage.

These two claims against Arrow, U.S. Administrators, the Hartford, Onecard, and Met/USA are based on the allegation that, as a result of oral misrepresentations made by, or on behalf of, defendants, St. Mary's believed that Jaclyn was a covered dependent and that it would be paid for all services and supplies rendered to her.
St. Mary's has offered no evidence that the Hartford, U.S. Administrators, or Arrow gave assurances to St. Mary's that Jaclyn was a covered dependent under the plan. There is some evidence that Onecard may have made such a representation, see Deposition of Jeffrey Schoonover, patient account manager at St. Mary's, at 53 (testifying that a form from Onecard International dated January 12, 1987 and apparently related to verification of Jaclyn Cristiano's account said under the heading "Basic Coverage," "Comments: Child must be enrolled within 30 days in order to get benefits"); however there is no evidence that Onecard was acting as an agent for one or more of the other defendants. Regardless, its claim against defendants is preempted by ERISA.
Title 29 U.S.C. 1144(a) provides that ERISA shall supersede "any and all state laws insofar as they may now or hereafter relate to an employee benefit plan." There is no dispute that the plan at issue here is an ERISA plan. The only question is whether the common law rule under which St. Mary's brings its claims "relates to" the plan.
The answer is that it does. The Supreme Court has held that the term "relates to" is to be given "its broad common-sense meaning," such that a state law "relates to" a benefit plan "in the normal sense of the phrase, if it has connection with or reference to such a plan." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Thus, in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987), the Court determined that state common law tort and contract claims asserting improper processing of a claim for benefits under an employee welfare benefit plan are preempted by ERISA. Moreover, the Ninth Circuit has held specifically that state common law claims for misrepresentation are preempted by ERISA where such misrepresentations are related to entitlements under employee health benefit plans. See Scott v. Gulf Oil Corp., 754 F.2d 1499, 1504, 1506 (9th Cir. 1985); Blau v. Del Monte Corp., 748 F.2d 1348, 1356-57 (9th Cir.1985). No matter how they are characterized, St. Mary's claims for detrimental reliance and negligent misrepresentation are claims for benefits Salli alleges she should have been awarded under the Plan. Accordingly, these claims are preempted.

B. The Cristianos' Claim Against U.S. Administrators, Met/USA, and the Hartford for Tortious Breach of Statutory Duty.

The claim for tortious breach of statutory duties pursuant to Cal.Ins.Code § 790.03(h) is based on the contention that the Cristianos failed to obtain additional coverage for Jaclyn because defendants *740 orally misrepresented that Jaclyn would automatically be enrolled so long as she was enrolled within 31 days of her birth.
This claim is preempted by ERISA. See Kanne v. Connecticut General Life Ins. Co., 859 F.2d 96 (9th Cir.1988) ("[U]nder Pilot Life, we find the conclusion inescapable that [Cal.Ins.Code] § 790.03(h) is preempted by ERISA"); see also Commercial Life Ins. Co. v. Superior Court, 47 Cal.3d 473, 253 Cal.Rptr. 682, 764 P.2d 1059 (1988) (agreeing with 9th Circuit ruling in Kanne).

C. St. Mary's Two Claims for Breach of Contract.

St. Mary's asserts two claims for breach of contract against Arrow, U.S. Administrators, Hartford, Onecard, and Met/USA. One claim alleges that St. Mary's was an "intended [third party] beneficiary" of the plan. This claim is preempted. See Pilot Life; see also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The other claim is a direct claim for benefits under ERISA and is considered below.

D. The Cristianos' and St. Mary's Claim for ERISA Benefits.

Under 29 U.S.C. § 1104(a)(1), a fiduciary must discharge his duties with respect to the plan "solely in the interests of the participants ... and ... in accordance with the documents and instruments governing the plan...." The Cristianos allege that all of the defendants "orally represented that plaintiff Jaclyn Cristiano's medical expenses would be covered by the aforementioned insurance policy" and that they (the Cristianos) "reasonably relied on such material representations so as not to obtain any additional and/or applicable health insurance coverage for plaintiff Jaclyn Cristiano."

1. Whether St. Mary's Has Standing to Assert This Claim
Defendants argue that St. Mary's lacks standing to assert such a claim. Section 502 of ERISA, 29 U.S.C. § 1132(a), provides that a civil action may be brought under ERISA by a plan participant, beneficiary, or fiduciary, or by the Secretary of Labor. St. Mary's is none of these things. However, St. Mary's has submitted evidence that Salli made an assignment of her rights of reimbursement to the hospital. See Exhibits 1 and 2 to Declaration of Rick Vasquez, St. Mary's Patient Account Administrator, in Support of St. Mary's Opposition to Hartford's Motion for Summary Judgment. Under Misic v. Building Services Employees Health and Welfare Trust, 789 F.2d 1374, 1378 (9th Cir.1986), therefore, St. Mary's has standing. See also Fentron Industries v. Nat. Shopmen Pension Fund, 674 F.2d 1300 (9th Cir. 1982); Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286 (5th Cir.1988).

2. Exhaustion of Administrative Procedures
U.S. Administrators contends that the Cristianos failed to exhaust the administrative grievance procedures available to them under the terms of Salli Cristiano's health plan. See, e.g., Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir.1980). The Plan provides that, upon receipt of a denial from the administrator, an appeal may be made directly to the Hartford. The claimant may request a review upon written application within sixty days of receipt of the claims denial and provide any pertinent documents and submit issues and comments in writing. Hartford is required to render a decision no more than sixty days after receipt of a request for review setting forth specific reasons for the decision reached and specific references to the provisions of the plan upon which the decision is based. See Exhibit 3 to Hartford's Memorandum in Support Motion for Summary Judgment at 101. Salli Cristiano did not make any attempt to appeal to the Hartford the decision to deny her claim, despite the fact that she was in possession of a booklet issued by the Hartford which apparently described the appeals procedure. See Deposition of Salli Cristiano, attached as Exhibit to U.S. Administrator's Memorandum in Support of Motion for Summary Judgment, at 43-44.
*741 In opposition, the Cristianos argue that the letter from U.S. Administrators notifying Salli Cristiano of its denial of coverage for Jaclyn failed to call her attention to her right to appeal the decision administratively, see Exhibit F to Cristianos' Opposition to Defendants' Motions for Summary Judgment, and that such failure was in violation of Hartford's own procedure for denial of claims, see Exhibit G to Cristiano's Opposition to Defendants' Motion for Summary Judgment, and in violation of the federal regulation on which the Hartford's procedure was apparently modeled, see 29 C.F.R. § 2560.503-1(f).
Salli Cristiano's apparent failure to exhaust the intra-plan administrative remedies available to her is not sufficient to require summary judgment in favor of defendants. Whether or not the letter from U.S. Administrators to Salli Cristiano was adequate notice of the appeals procedure, see Ex. F to Cristiano's Opposition, given the fact that an appeal by the Cristianos at this point would be futile, it is appropriate to consider the merits of their case. See Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union No. 162, 558 F.2d 923, 925 (9th Cir.1977).

3. Proper Defendant Under ERISA
The Hartford and U.S. Administrators both concede that they are fiduciaries under the plan. However, Arrow contends that it is not a fiduciary because it did not underwrite the policy, administer the policy, or make any decisions regarding the payment of dependent coverage claims.
Title 29 U.S.C. § 1102(a) provides:
(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.
(2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument....
Title 29 U.S.C. § 1002(21)(A)(i) in turn provides that a person is a fiduciary with respect to a plan to the extent "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."
While there is no doubt that an employer may be held to be a fiduciary under an ERISA plan, see, e.g., Moehle v. NL Industries, Inc., 646 F.Supp. 769 (E.D.Mo.1986), there is also no reason to suppose that it must be so held. Since there is no evidence which controverts Arrow's contention that it exercised no administrative authority or discretionary control under the plan, summary judgment in Arrow's favor on this ground is appropriate.

4. Proper Standard of Review
In Firestone Tire & Rubber Co. v. Bruch, ___ U.S. ___, 109 S.Ct. 948, 103 L.Ed.2d 80, 95 (1989), the Supreme Court held that:
[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.
Defendants contend that the Agreement and Declaration of Trust between U.S. Administrators and the First National Bank of Jackson is part of the Plan under §§ 1002(1) and 1024(b)(4), and that because it confers on U.S. Administrators the authority to "determine all questions of interpretation, policy or administration ... of the plans of [participating] employers," the Firestone exception applies. Plaintiffs contend that, even if the trust agreement gives U.S. Administrators discretionary authority, the Plan itself does not. They further argue that Hartford's involvement in the decision to deny coverage for Jaclyn Cristiano requires analysis under a less deferential standard, see Fielding v. International Harvester Co., 815 F.2d 1254 (9th Cir.1987), and that in any event, a triable issue is raised about the reasonableness of U.S. Administrator's exercise of discretion.
*742 The administrator in this case, unlike Firestone, had discretionary authority to construe the terms of the plan. That it consulted the Hartford after initially determining that a medical history form would be required because of late enrollment  and that the Hartford advised that it concurred  is not inconsistent with U.S. Administrators' exercise of the discretion with which it was invested. No conflict of interest was implicated. Cf. Jung v. FMC Corp., 755 F.2d 708 (9th Cir.1985) (where employer's financial interests are affected by its decision, less deference is given). At most, this is a factor to be weighed in determining whether its construction of the Plan was reasonable. See Hoover v. Blue Cross and Blue Shield of Alabama, 855 F.2d 1538 (11th Cir.1988) ("reasonableness and good faith are the proper measures of whether an interpretation of a policy is arbitrary and capricious.") Accordingly, it is appropriate to measure U.S. Administrator's determination under an arbitrary and capricious standard.

5. Whether the Decision to Require Proof of Insurability Was Arbitrary and Capricious

The burden is on plaintiff to prove that the administrator's interpretation was arbitrary and capricious. Hoover, 855 F.2d at 1541. If the disputed provision is ambiguous, and reasonably susceptible to the interpretation given by defendants, it satisfies the arbitrary and capricious standard as a matter of law. Id. at 1542. Two relevant factors are the reasonableness of the administrator's construction and the uniformity of a plan administrator's construction of a disputed provision. Id.

a. Reasonableness of Interpretation of the Disputed Provisions

Under the arbitrary and capricious standard, any "reasonable" interpretation, "short of plainly unjust measures," is to be upheld. See Fielding, 815 F.2d at 1256. Whether U.S. Administrators' decision to require proof of insurability was a reasonable decision turns on its interpretation the provision governing the date on which Salli became eligible for dependent coverage, and the provision governing the date on which Jaclyn could be covered under the plan.
The provision governing the date on which Jaclyn could be covered under the plan is entitled, "When You Are Insured  Contributory Insurance." Under that provision, each dependent becomes a covered person on the first to occur of: (1) the date the employee becomes eligible for dependent coverage if the dependent enrolls on or before that date, (2) the date the employee enrolls for such coverage if done within 31 days after the employee becomes eligible, (3) with respect to each dependent, the date the Hartford approves evidence of the dependent's insurability, or (4) if the employee acquires an additional dependent after the effective date of his first dependent's coverage, then from the date on which the additional dependent is acquired.
When Jaclyn could be covered turns on the date on which Salli became eligible for dependent coverage. The plan provides that each person who is eligible for insured persons coverage becomes eligible for dependents coverage on the later of: (1) the date he or she becomes eligible for insured persons coverage or (2) the first day of the month which occurs on, or next follows, the date he or she acquires "a Dependent."
The Cristianos contend that Salli became eligible for insured persons coverage on the date she acquired Jaclyn and that the later date on which she became eligible for dependent coverage, therefore, was that date. They argue that the plain language of the Plan indicates that Salli was eligible for dependent coverage on the date she acquired "a" dependent, not on the date she acquired her first dependent. Under that construction, Salli was entitled to enroll Jaclyn in the plan within 31 days of the date of her birth, without proof of insurability.
Defendants argue that Salli already had "a dependent" at the time of her employment and that the later date on which she became eligible for dependents coverage was therefore the date on which she became eligible for insured persons coverage  namely, May 1, 1986. Defendants then *743 argue that, since Salli did not enroll for dependent coverage on the date she became eligible or within 31 days of that date, neither provision (1) nor provision (2) governing when a dependent becomes a covered person is applicable. Provision (4) also does not apply, they argue, because, at the time of her enrollment, Salli already had a dependent  namely, her husband  for whom she declined to obtain coverage. Accordingly, defendants argue, provision (3) must apply. And, since Jaclyn was born prematurely and with a T.E. fistula, defendants argue that the decision that she did not qualify for coverage under Hartford's underwriting guidelines was not unreasonable. See Declaration of Thomas Snow in Support of Hartford's Motion for Summary Judgment.
Plaintiffs offered no evidence to controvert Hartford's submission that it is customary to allow unrestricted enrollment of dependents only for a limited time, and thereafter to require proof of medical history. They simply argue that Hartford and U.S. Administrators' construction of the plain language of the Plan is unreasonable. However, the language is not so plain as to be susceptible only of plaintiffs' view. A good case can be made that the language requires a new enrollee with any dependent at the time of enrollment to sign up for dependent coverage within 31 days, at the risk of having to prove insurability for that dependent or any others subsequently acquired, if she later changes her mind.[3] Although not necessarily the only possible or only plausible interpretation, it is a reasoned one to which deference is accordingly owed.
Plaintiffs argue that the way defendants consulted, and interpreted the Plan indicates that they did not act reasonably. The fact that Hartford's advice was sought, after U.S. Administrators had already taken the position that a medical history form would be required for Salli's husband and Jaclyn, does not raise a triable issue because, even assuming that it was improper to consult, the consultation did not result in an unreasonable interpretation or one different from that already adopted by the administrator.
Finally, plaintiffs contend that U.S. Administrators and Arrow indicated to Salli that she should apply for coverage for her baby within 31 days of her birth,[4] and that they should either be estopped or this factor should be considered along with others in determining whether their conduct was reasonable. Common law principles of estoppel are not applicable to ERISA claims.[5] Nor do the statements made raise *744 a triable issue on unreasonableness or bad faith: to have advised Salli that she should apply within 31 days is not inconsistent with applying under the provisions of the Plan for a newly acquired dependent.

b. Uniformity of Plan Application

Plaintiffs have failed to meet their burden under Celotex and Matsushita in opposing summary judgment on this ground. Hartford has submitted evidence that its practice with respect to dependent coverage is standard in operating procedure. Plaintiffs have submitted no evidence of inconsistency in construction save for the "Met/USA Insurance Trust Administrative Kit." That Kit in turn refers to the Group Plan Booklet and provides that, if the applicant shares a portion of cost and does not enroll when eligible, medical histories must be completed. As this is consistent with the interpretation made by the Hartford and U.S. Administrators, it does not raise a triable issue of fact.
Plaintiffs also argue that defendants' evidence of consistency pertains to dependent coverage in general, not to pregnancy in particular, but they proffer no evidence from which a trier of fact could reasonably conclude that the Hartford or U.S. Administrators had a policy of paying benefits in situations similar to this one. Accordingly, there is no evidence from which it could be inferred that, on this basis, defendants' interpretation of the plan was not reasonable.
For the foregoing reasons, Hartford's, U.S. Administrators', and Arrow's motions for summary judgment on the Cristianos' claim for ERISA benefits all are granted. The Cristianos' motion with respect to ERISA benefits is denied.

Conclusion
Accordingly, the court grants the motions for summary judgment brought by Arrow, U.S. Administrators, Met/USA, and the Hartford on St. Mary's claims for detrimental reliance, negligent misrepresentation, breach of contract and breach of contract on a third party beneficiary theory and on the Cristianos' claims for ERISA benefits and tortious breach of statutory duty, and denies the motions for summary judgment brought by St. Mary's and the Cristianos.
NOTES
[1] It appears that defendant Onecard was never served, and is therefore not a party to these motions.
[2] St. Mary's also has three common counts against the Cristianos for money owed, none of which is at issue on these motions.
[3] The waiver Salli signed and her testimony that this was the risk she took in declining dependent coverage for her husband, suggest that her understanding, even if relevant, was not different.
[4] The Cristianos have introduced evidence which arguably suggests that employees of both Arrow and U.S. Administrators may have led Salli to believe that she could add Jaclyn as a dependent without proof of insurability. First, Salli testified that she asked Daley how she would "go about adding on somebody in the event [she] got pregnant," and that Daley "explained [to her that she] had 31 days to enroll the child on the plan, it is a matter of filing out a form, sending it in through her at Arrow, and that would be the end of it." Exhibit "1" in Support of Hartford's Memorandum in Support of Motion for Summary Judgment at 53. Second, Salli testified that she received a letter from U.S. Administrators reminding her to enroll her child under the plan within 31 days of its birth. Id. at 56. Third, Salli testified that she spoke to Sidney Schaeffer at U.S. Administrators who also told her that, "after the child is born [she would have] 31 days, [she should] go to [her] employer, [] fill out a firm, and that is the end of it." Id. at 56-57.
[5] The Cristianos argue that, regardless of the literal language of the plan, this evidence raises, a triable issue of fact as to whether defendants breached their fiduciary duty. As support for this argument, plaintiffs cite Dockray v. Phelps Dodge Corp., 801 F.2d 1149, 1155 (9th Cir.1986) (court may take into account state law equitable principles of estoppel and detrimental reliance in determining rights under an ERISA plan).

While the pre-Pilot Life opinion in Dockray arguably may have supported plaintiffs' argument, it is now clear that estoppel principles do not apply to claims of this sort governed by ERISA. See Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir.1989) (plan administrator cannot be equitably estopped from denying that it is the administrator if permitting recovery would be inconsistent with the express language of ERISA); Davidian v. Southern California Meat Cutters Union and Food Employees Benefit Fund, 859 F.2d 134 (9th Cir.1988) (plaintiff alleged that a fund employee had misled him regarding the limitations of a health insurance plan; court held that not only did ERISA preempt plaintiffs' state law claims for bad faith, fraud, deceit, and breach of fiduciary duty, but it also prohibited recovery based on a theory of estoppel); see also Thurber v. Western Conference of Teamsters Pension Plan, 542 F.2d 1106 (9th Cir.1976) (benefit plan cannot be equitably estopped from denying benefits if payment would be inconsistent with the written plan). Moran, Davidian and Thurber are consistent with Congress' intention that employee benefit plans be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and with the principle that oral modifications of such plans therefore are impermissible. See e.g., Nachwalter v. Christie, 805 F.2d 956, 959 (11th Cir.1986); see also Straub v. Western Union Tel. Co., 851 F.2d 1262 (10th Cir.1988); Northwest Administrators, Inc. v. B.V. & B.R., Inc., 813 F.2d 223 (9th Cir.1987).