THE MEADOWS, Plaintiff,

v.

EMPLOYERS HEALTH INSURANCE,
Defendant.

No. CIV 92–1201 PHX PGR.

United States District Court,
D. Arizona.

June 14, 1993.

Christopher D. Payne, Snell & Wilmer, Phoenix, AZ, for plaintiff.

William M. Demlong, Bess & Dysart, Phoenix, AZ, for defendant.

## MEMORANDUM AND ORDER

ROSENBLATT, District Judge.

This removed action arises out of an insurance claim made by the plaintiff, The Meadows, under a policy issued by the defendant, Employers Health Insurance (Employers Health). The Meadows, a health care provider, contends that Employers Health wrongfully refused to pay the expenses of

two of the Meadows' patients after representing that the patients were covered by an Employers Health insurance policy.

Employers Health has moved to dismiss The Meadows' complaint as preempted by the Employment Retirement Income Security Act (ERISA). The Meadows counters first that the insurance plan is not an ERISA plan; and second that even if ERISA governs the plan, it does not preempt The Meadows' state claims. The Court holds that the insurance plan in question is an employee welfare benefit plan under ERISA, but finds that ERISA does not preempt the Meadows' state-law claims. Accordingly, the Court finds that this action should be remanded to state court.

## I. BACKGROUND

The complaint stems from the 1990 hospitalizations of John and Patricia Friedel. John Friedel was an employee of School Services & Leasing, Inc. (School Services). He and his wife were holders of an insurance policy issued by Employers Health. The Meadows claims that as a result of representations by Employers Health that the Friedels were covered by the Employers Health policy, The Meadows admitted the Friedels and provided care for them. Employers Health's failure to pay The Meadows for the Friedels' expenses gives rise to this action.

The Meadows originally filed a three count complaint alleging negligent misrepresentation, promissory estoppel, and breach of contract in Arizona Superior Court in January of 1991. The Meadows asserted these claims both as the Friedels' assignee (for benefits under the plan), and non-derivatively as a third-party (for damages).

Employers Health removed the action to this court on federal question grounds and moved to dismiss contending that ERISA governed the insurance plan and that ERISA preempted the plaintiff's state claims. On April 29, 1991, the Court entered a bench ruling dismissing the action without preju-

dice. The judgment for dismissal was entered on May 9, 1991.

The Court based the dismissal on the fact that the Meadows, because of the pervasive incorporation language in its complaint regarding the assignment from the Friedels, did not assert its claims independently from the Friedels. The Court explained:

> [T]here is no question that taken as a whole, the underlying claim is based on an ERISA plan ... I suspect that had you not ... alleged the assignment and [its] relationship to the misrepresentations in [complaint paragraphs] 22, 23 and 24, ... you might have had a claim based simply on the representations that the company made to The Meadows.

Transcript of Proceedings, April 29, 1991, at 13.

In June of 1992, The Meadows filed the present complaint in Arizona Superior Court alleging the same three counts of the original complaint. This time, however, the Meadows did not assert any claims as the assignee or subrogee of the Friedels. Instead, the Meadows sued only as a third-party health care provider contending that its claims were non-derivative and therefore independent to those of the Friedels. The Meadows is thus suing for damages and not for policy benefits.

Employers Health again removed the action on federal question grounds and moved to dismiss on two theories: first, that ERISA preempts the remedies sought by the Meadows; and second, that the suit is barred by the doctrine of res judicata[1]. In response, the Meadows moved to remand this action to the state court based on improper removal and lack of subject matter jurisdiction over the state claims.

## II. DISCUSSION

### A. Existence of an ERISA plan

The Meadows maintains that removal to federal court was improper because the in-

---

1. The Court concludes that the doctrine of res judicata does not bar this suit because the Court expressly dismissed the first action without prejudice. Transcript of Proceedings, April 29, 1991, at 14. A clerical error in the minute entry, since corrected pursuant to Fed.R.Civ.P. 60(a), inadvertently attached the "without prejudice" language to the denial of the other motion which was heard at the same time.

surance plan purchased by School Services was not an ERISA plan. The Court finds that this action was properly removed because the School Services' group insurance plan did constitute an employee welfare benefit plan within the meaning of ERISA.

■ The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). To determine whether an insurance plan is an ERISA plan, a district court should consider 29 U.S.C. § 1002(1), which defines an employee welfare benefit plan, and 29 C.F.R. § 2510.3–1(j), which clarifies the meaning of "establishing and maintaining" such a plan. *See Harper v. American Chambers Life Ins. Co.,* 898 F.2d 1432, 1433 (9th Cir.1990) (citing *Kanne,* 867 F.2d at 491–93, and *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins.,* 809 F.2d 617, 625 (9th Cir.1987)). 29 U.S.C. § 1002(1) defines an employee welfare benefit plan in part as

> any plan, fund or program which ... is ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment[.]

The group insurance Employers Health provided to School Services constituted a "plan" or "program". School Services was an employer, and maintained its insurance program for the purpose of providing its six employees with medical insurance. The question of whether this plan is governed by ERISA thus turns on whether the plan was "established or maintained" by the employer School Services.

■ To determine whether an employer has "established or maintained" an insurance plan, a court should consider 29 C.F.R. § 2510.3–1(j). *Silvera v. Mutual Life Ins. Co.,* 884 F.2d 423, 426 (9th Cir.1989). The

Department of Labor promulgated this regulation to clarify whether, and under what circumstances, an employer's adoption of a group insurance plan constitutes the establishment of an employee welfare benefit plan under ERISA. *Id.* 29 C.F.R. § 2510.3–1(j) provides:

> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or checkoffs.

■ The above code section provides a safe harbor for certain group insurance programs, enabling them to remain free of ERISA regulation. However, behavior inconsistent with any one of the four criteria constitutes evidence of the establishment of an ERISA plan. *Silvera,* 884 F.2d at 426; *Kanne,* 867 F.2d at 492. Although the evidence regarding School Services' contributions of premium payments on behalf of its employees is ambiguous and disputed, the evidence of record clearly establishes that the plan fails to satisfy either the "voluntariness" or "involvement" prongs of the regulation and is thus an ERISA plan.

### 1. Participation in the plan was not "completely voluntary" for employees of School Services

■ If participation in the group insurance plan was not "completely voluntary" for employees, ERISA governs the plan. 29 C.F.R. § 2510.3–1(j)(2). In the group insurance application, School Services agreed to 100% participation of all eligible employees for life and accidental death and dismemberment insurance, and 75% participation of all eligible employees for medical coverage. If participation dropped below 100% of the eligible employees for life and accidental death and dismemberment insurance or below 75% for medical coverage, coverage would terminate.

■ The Meadows argues that with only six employees (who all allegedly agreed to purchase the insurance) participation was completely voluntary. While this may be true for the original six employees of School Services at the time the plan was purchased, such a "consensus" does not render involvement in the plan completely voluntary for purposes of the regulation. The purpose of the "voluntariness" prong is to identify programs sponsored by the employer and meant to be a benefit of employment. Whatever the intent of the employees, School Services demonstrated its intent to establish an insurance plan for its employees by requiring 100% participation. *See Cote v. Durham Life Ins. Co.,* 754 F.Supp. 18, 21 (D.Conn. 1991).

■ The administration of an insurance plan alone can cause it to fall within ERISA coverage. *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987); *Cote,* 754 F.Supp. at 21. While the intent of the employees may have been just to provide insurance for their families and not to enter into an employee benefit plan, the manner in which School Services administered the plan via the 100% participation agreement renders the plan an involuntary benefit of employment.

The Meadows further argues that despite the 100% and 75% participation requirements, the plan is not an automatic benefit of employment. The Meadows contends that if a new or current employee decided that he no longer desired the insurance, the remaining employees would simply terminate the policy and seek individual arrangements or another group policy without the participation requirements. The Court finds this argument unpersuasive. The evidence supports the conclusion that School Services intended this insurance to be an employment benefit. If the benefit was meant to be an option for employees there would be no participation requirement of 75% or 100%. Accordingly, the plan is not exempt from ERISA regulation under 29 C.F.R. § 2510.3–1(j)(2).

### 2. School Services "endorsed" the group plan within the meaning of 29 C.F.R. § 2510.3–1(j)(3)

■ If School Services' involvement in the group insurance program rose to a level of "endorsement", ERISA governs the plan. 29 C.F.R. § 2510.3–1(j)(3). In other words, School Services' involvement in the plan must not exceed that of a "mere advertiser who makes contributions on behalf of its employees." *Kanne,* 867 F.2d at 492; *Credit Managers,* 809 F.2d at 625. The policy behind the involvement prong is to prevent situations where the employer is taking positions on behalf of, or in coordination with, the insurer or administrator. *du Mortier v. Massachusetts General Life Ins. Co.,* 805 F.Supp. 816, 821 (C.D.Cal.1992).

■ 29 C.F.R. § 2510.3–1(j)(3) allows the employer to perform certain duties and still remain within the safe harbor of the regulation (i.e. remain free from ERISA regulation). An employer may permit the insurer to publicize the program and may collect premium payments through payroll deductions and remit them to the insurer. In this case, however, School Services' involvement in the insurance plan went beyond that allowed by the regulation. School Services' relationship with Employers Health posed the exact dangers ERISA is meant to regulate.

School Services was the party ultimately responsible for the payment of the premiums. Because of the participation requirements, if one employee decided to stop pur-

chasing the insurance, School Services would either have to pay the premiums itself or cancel the entire policy. Nor could employees independently subscribe to Employers Health under this policy. Coverage terminated upon the cessation of the employer's involvement, or upon the termination of the worker's employment. A group plan with this level of employer involvement and lack of employee autonomy is precisely the type of plan ERISA was intended to monitor. *Cf. Cote,* 754 F.Supp. at 21 (finding that a 75% participation requirement exemplifies a level of participation by the employer that establishes an ERISA plan). "An employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." *Brundage–Peterson v. Compcare Health Services Ins. Corp.,* 877 F.2d 509, 511 (7th Cir.1989).

Aside from the direct contractual agreement between the employer and the insurer, there is other evidence that School Services was not simply a mere advertiser of the group plan. The insurance application indicates that "the participating employer" determined the deductibles, benefits, and the classes of eligible employees. Insurance documents and correspondence also refer to School Services as the plan sponsor and administrator. This level of involvement is inconsistent with 29 C.F.R. § 2510.3–1(j)(3). School Services did not merely advertise the group insurance. It "endorsed" the plan within the meaning of the regulation. Accordingly, the insurance plan has failed 29 C.F.R. § 2510.3–1(j)(3) and is an ERISA plan.

■ Since the plan in question is an ERISA plan due to its failure to meet the second and third prongs of 29 C.F.R. § 2510.3–1(j), removal to federal court was proper. *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 243 (5th Cir.1990).

**B. Preemption of The Meadows' state-law claims**

The remaining issue before the Court is whether ERISA preempts a hospital's state-law claims which are based on the hospital's independent position as a third-party, rather than on its derivative status as an assignee of benefits under an ERISA plan. The Ninth Circuit has not directly examined the question[2], but has stated that "ERISA preemption extends to ... claims brought under state-law doctrines that do not explicitly refer to employee benefit plans ... when the claims arise from the administration of such plans." *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985). This standard derives from the "related to" test developed by the Supreme Court.

■ The Supreme Court has offered considerable guidance regarding the scope of preemption under ERISA. A state law is preempted if it "relates to" an employee benefit plan, *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987); *see* 29 U.S.C. § 1144(a), and a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983) (emphasizing that ERISA preemption clause is not limited to state laws specifically designed to affect employee benefit plans).

■ While this language is broad, it is not all-encompassing. *Nevill v. Shell Oil Co.,* 835 F.2d 209, 212 (9th Cir.1987). "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. For example, "[r]un-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan ... *although obviously affecting and involving*

---

**2.** Employers Health cites *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374 (9th Cir.1986), as authority contrary to the Meadows' argument. *Misic,* however, is not helpful. It only reaffirms the principle that ERISA preempts the state claims of a provider suing as assignee of a beneficiary's rights for benefits under an ERISA plan. 789 F.2d at 1378. The court explained: "Dr. Misic sues derivatively, as an assignee of [the] beneficiaries. As ... the complaint alleges, Dr. Misic 'stands in the shoes of the [b]eneficiaries[.]' " *Id.*

*ERISA plans and their trustees,* are not pre-empted by ERISA[.]" *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988) (emphasis added). Such claims do not sufficiently implicate the policies behind ERISA and are not barred by federal law. *See id.* at 832, 108 S.Ct. at 2186. Thus, when determining whether ERISA preempts a specific state law, one should look to the policy behind the federal act. The question whether a certain state action is preempted by federal law is one of congressional intent. *Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1551 (referring to congressional intent as the "ultimate touchstone").

▪ It is clear that ERISA preempts a state-law cause of action brought by an ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits. *Id.* at 47, 107 S.Ct. at 1552. ERISA also preempts such state-law claims brought by an assignee of the beneficiary's rights. *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374, 1377–78 (9th Cir.1986). However, courts have recognized that where the plaintiff is a third-party health care provider, suing non-derivatively, preemption does not necessarily occur.

▪ In *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990), the Fifth Circuit discerned that in cases of ERISA preemption there are at least two unifying characteristics: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities (the employer, the plan and its fiduciaries, and the participants and beneficiaries). *Id.* at 245. The *Memorial* court concluded that the case at hand (a third-party health care provider, suing independently for *damages* for misrepresentation of insurance coverage), did not sufficiently implicate the these factors to warrant ERISA preemption. *Id.* Supporting its determination that the misrepresentation claim was independent of ERISA, the court cited a number of policy considerations.

First, if an insurer misrepresents a patient's coverage under an insurance policy, the health care provider's remedy does not expand the rights of the patient/beneficiary. The court explained:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. *A provider's state-law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.*

*Id.* at 246 (emphasis added); *see also Forest Springs Hosp. v. Illinois New Car and Truck Dealers Ass'n Employees Ins. Trust,* 812 F.Supp. 729, 732 (S.D.Tex.1993); *HCA Health Serv. of the Midwest, Inc. v. Catrambone,* 682 F.Supp. 381, 383 (N.D.Ill.1988). The court found that enforcing the allocation of such risks between commercial entities within its borders is a "classically important state interest." *Memorial,* 904 F.2d at 246.

A district court in Pennsylvania further emphasized this type of action's independence from ERISA when it found that such non-derivative state claims did not affect the relations between principal ERISA entities sufficiently to warrant preemption. *See Albert Einstein Medical Ctr. v. Action Mfg. Co.,* 697 F.Supp. 883 (E.D.Pa.1988). In other words, the effect of such an action was "too tenuous, remote, or peripheral" to be preempted. *Memorial,* 904 F.2d at 249. The court reasoned that "despite the breadth of ERISA's preemption provision," a hospital's claim of promissory estoppel against an ERISA plan was independent of, and not preempted by the Act. *Albert Einstein,* 697 F.Supp. at 884–85. The court explained:

The plaintiff in this action is not an aggrieved participant or beneficiary of the defendant's plan. Nor is the plaintiff suing as a third-party beneficiary of the plan, claiming that the terms of the plan require payment for the services it rendered. In fact, the plaintiff's cause of action does not in any sense turn on an interpretation of the rights of a beneficiary under the plan. Rather, the complaint alleges that the agents of the defendant's employee benefit plan misrepresented that the plan would cover the expenses of one of its beneficiaries. The estoppel claim is thus independent of the defendant's *actual* obligations under the benefit plan.

*Id.* at 884 (emphasis in original). The court distinguished cases which involved state common law actions brought by actual beneficiaries (employees who claimed rights to benefits pursuant to the terms of their benefit plans). *Id.; cf. Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1377–78 (9th Cir.1986) (holding that ERISA preempts *derivatively asserted* third-party claims). When the claim is not based on a right related to the statutory protections under ERISA, the case for preemption is much weaker. *Albert Einstein,* 697 F.Supp. at 885. The congressional purpose underlying the breadth of the preemption provision (to secure uniform federal laws regulating employee benefit plans) is not advanced by preemption of state claims not premised on a violation of duties imposed by ERISA. *Id.*

The *Memorial* court noted further that preemption in such a case would discourage health care providers from becoming assignees. *Memorial,* 904 F.2d at 247. Such discouragement, the court felt, would undermine the congressional goals of protecting beneficiaries and enhancing health coverage for employees. Assignments facilitate the acquisition of health care in at least two manners. First, by making it unnecessary for health care providers to evaluate the solvency of each patient before commencing medical treatment; and second, by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan. *Id.* (citing *Misic,* 789 F.2d at 1377). Hindering such assignments would make health care more expen-

sive and less available, thus defeating one of the major purposes of ERISA. *Id.* The court in *Forest Springs* similarly stated:

> At a time when concerns are being voiced nationwide that health care should be made more available and affordable, precluding a health care provider from recovering against a benefit plan for misrepresentation of coverage would only serve to exacerbate the problem. Third-party providers no doubt would become increasingly wary of rendering medical treatment to patients without a sizable up-front deposit or a substantial delay in order to assure coverage. This would defeat the purposes of ERISA and impinge upon the accessibility of medical services to all Americans. (citation omitted).

*Forest Springs,* 812 F.Supp. at 733;

The commercial relationship between the provider and the insurer also influenced the *Memorial* court in its finding against preemption:

> Hospitals and other health care providers must, and do, rely upon the insurance carriers' representations of coverage in making their decisions regarding admission of potential patients. If insurance coverage and benefits can be verified, the hospital will usually accept an assignment of benefits to insure it is paid for any services rendered. If insurance coverage and benefits cannot be verified or if no coverage exists, the medical provider can then make alternative financial arrangements. To insulate the insurance carriers from liability leaves the medical provider without recourse against the party causing its damage, if it acts in reliance on the representation of coverage.

*Memorial,* 904 F.2d at 246–47 (quoting *Hermann Hosp. v. National Standard Ins. Co.,* 776 S.W.2d 249, 252 (Tex.App.1989)). Insurers should not be able to hide behind a statute enacted, at least in part, to regulate their abuses.

Basically, *Memorial* and those following its logic decided against ERISA preemption because they could not see how insulating plan fiduciaries from the consequences of their own misrepresentations to third-party pro-

viders furthered any of ERISA's goals. *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.,* 944 F.2d 752, 754–55 (10th Cir.1991); *Memorial,* 904 F.2d at 247; *Forest Springs,* 812 F.Supp. at 733. The facts of these cases dealt with health care providers seeking damages from insurance companies claiming that had it not been for negligent misrepresentations of coverage, the provider would not have accepted the financial risk of providing the medical treatment. These courts did not think that Congress intended ERISA to regulate such commercial interactions of such entities in such situations. *See Hospice,* 944 F.2d at 756; *Memorial,* 904 F.2d at 250; *Forest Springs,* 812 F.Supp. at 733.

Contrary to this line of authority, Employers Health would have the Court follow others who have held that ERISA preempts the non-derivative claims of a third-party health care provider. *See, e.g., Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991); *Barnes Hosp. v. Sanus Passport/Preferred Services, Inc.,* 809 F.Supp. 725 (E.D.Mo.1992); *St. Mary Medical Center v. Cristiano,* 724 F.Supp. 732 (C.D.Cal.1989)[3]. These courts found that a provider's claims, no matter how they are characterized, are claims for benefits under an ERISA plan. *St. Mary Medical Center,* 724 F.Supp. at 739. The courts were mainly concerned that: (1) damage awards would affect the finances of the insurer leaving fewer funds to pay the claims of beneficiaries; and (2) allowing these claims would subject the ERISA plans to inconsistent state laws thus increasing costs. *See Cromwell,* 944 F.2d at 1279 (Suhrheinrich, J., concurring).

These cases, however correct in pointing out incidental effects on an ERISA plan, have not persuaded this Court that the state claims at issue here sufficiently "relate to" an ERISA plan to justify preemption. The effects on the ERISA plan simply do not outweigh the policy concerns discussed above.

Instead, the Court agrees with the *Memorial* line of cases which hold that misrepresentations made by the insurer to the health care provider may create duties distinct from those under the plan.

The purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries by regulating benefit plans. 29 U.S.C. § 1001(b). One way in which this is done is by providing for appropriate remedies, sanctions, and ready access to the federal courts. *Id.* This purpose, however, must be balanced with the desire to encourage employers to provide health insurance. *See Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556. ERISA is thus a "bargain". Participants and beneficiaries receive the protections of ERISA in exchange for giving up certain rights to sue under previous federal and state law. It is understandable and expected that an insurer would use ERISA preemption to avoid state claims of participants and beneficiaries or their assignees. This is part of the "bargain". However, plan fiduciaries should not be able to use ERISA to shield themselves from the consequences of their actions toward other entities who are "not a party to this bargain." *Memorial,* 904 F.2d at 249. It is inappropriate, and an unlikely congressional aim, to place the risk of non-payment upon the third-party provider when it was the benefit plan which misrepresented to the provider the patient's coverage. *Id.* at 246; *Forest Springs,* 812 F.Supp. at 733.

While, as stated in *Cromwell,* 944 F.2d at 1279, claims of misrepresentation and estoppel between providers and insurers will certainly have *some* effect on the ERISA plan and its trustees, this does not bar the claims. *See Mackey,* 486 U.S. at 833, 108 S.Ct. at 2187 (stating that "run-of-the-mill state law claims, ... although obviously affecting and involving ERISA plans and their trustees are not preempted"); *Shaw,* 463 U.S. at 100 n.

3. The facts of the *St. Mary* case are somewhat different from those in this case. In *St. Mary,* the hospital, while alleging two independent non-derivative claims against the insurer, also sued for benefits under a third-party beneficiary theory and for breach of contract under ERISA. The hospital was thus claiming, at least in part of its complaint, that the insurer had improperly denied benefits. This may distinguish this case from the others in this section because at least one court has found that this factor (recovery under ERISA as an assignee is at least possible) justified preemption because of the policy against conflicting and inconsistent state laws. *See Brown Schools, Inc. v. Florida Power Corp.,* 806 F.Supp. 146, 150–51 (W.D.Tex.1992).

**1234**

21, 103 S.Ct. at 2901 n. 21 (finding that some state actions may have too distant of an effect on an ERISA plan to warrant preemption). Despite this effect on the ERISA plan, it is evident that representations between insurers and health care providers create duties which are distinct from the ERISA plan.

## III. CONCLUSION

Where, as here, the health care provider (1) sues independently and not as an assignee of a beneficiary; (2) does not claim any benefits or rights under the ERISA plan; and (3) the alleged misrepresentations concern the existence and not the extent of coverage [4], any effect upon the ERISA plan or its trustees is outweighed by the policy concerns discussed above. Accordingly, the Court finds that ERISA does not preempt The Meadows' state claims for negligent misrepresentation and promissory estoppel and breach of contract. Therefore,

IT IS ORDERED that defendant Employers Health Insurance's Motion to Dismiss (doc. # 2) is denied.

IT IS FURTHER ORDERED that defendant Employers Health Insurance's Motion for Rule 11 Sanctions (doc. # 3) is denied.

IT IS FURTHER ORDERED that plaintiff The Meadows' Motion to Remand (doc. # 9) is granted in part and that this action is remanded to the Arizona Superior Court for Maricopa County.

---

4. It is undisputed that the Friedels were not in fact covered by the ERISA policy due to terminated employment and that the Meadows is not attempting to "modify" the plan.