Brookwood Medical Center (Brookwood) appeals from an order of the trial court which granted a motion for summary judgment in favor of Celtic Life Insurance Company (Celtic). Specifically, the trial court found that the claims asserted by Brookwood were preempted under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 through 1461 (1988) (ERISA).
This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
Our review of the record reveals the following facts: Bernie P. Beringer had a group health insurance plan (Plan) through his employment with Milber, Inc. (Milber). This Plan was governed by and subject to the provisions of ERISA. Celtic is the plan administrator for Milber and underwrites the Plan. Dun Bradstreet Plan Services (Dun Bradstreet) administers the Plan for Celtic.
In July 1991 Beringer's physician recommended that he undergo neck surgery. Under the terms of the Plan, certification must be obtained from Celtic for all hospital admissions, outpatient surgeries, and major diagnostic procedures.
Prior to admitting Beringer to its hospital, Brookwood called Dun Bradstreet to obtain certification that Beringer was insured by Celtic for the procedures recommended by his physician. Dun Bradstreet informed Brookwood that Beringer was insured for the recommended procedures. In fact, Beringer received a precertification letter dated July 15, 1991, which provided, in pertinent part, that his "hospital admission has been certified to be medically necessary and appropriate for purposes of reimbursement."
Beringer was admitted to Brookwood on July 24, 1991. His physician performed a posterior laminectomy on Beringer's neck. The total cost for this surgery was $16,139. Brookwood has been paid $1,083.50 on this account, which leaves a balance due of $15,055.50.
Brookwood billed Celtic for payment of the balance. Celtic informed Brookwood that the certification had been made in error, as it had been discovered that Beringer's Plan contained a rider which excluded coverage for "any disease or disorder of the back or spine." Celtic declined and refused to pay Brookwood for the services rendered to Beringer.
Brookwood filed suit in its independent status as a third-party provider and used, as the basis of its complaint, the theories of promissory estoppel and negligent misrepresentation. Celtic filed a motion for summary judgment, alleging that Brookwood's claims under state law have been preempted under ERISA and that Brookwood has no action under ERISA against Celtic. As previously noted, the trial court granted the motion for summary judgment in favor of Celtic.
Neither party disputes that the Plan involved in this case was governed by ERISA. Neither party disputes that there was a rider on Beringer's Plan which excluded coverage for "any disease or disorder of the back or spine."
The issue involved in this appeal is whether Brookwood's claims of promissory estoppel and negligent misrepresentation, which were asserted in its independent status as a third-party provider, were preempted under ERISA.
Brookwood argues that there should be no preemption under ERISA in this particular fact situation. The pertinent facts are as follows: (1) Celtic represented that Beringer had coverage before Brookwood rendered services to Beringer; (2) this representation by Celtic was, in fact, false, and Brookwood incurred damages because it relied on this representation; and (3) Brookwood brought a state law claim against Celtic, wherein Brookwood does not assert entitlement to any benefits under the Plan, but is seeking to recover damages for the negligent misrepresentations concerning coverage.
It is well settled that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," as defined by the Act. 29 U.S.C. § 1144(a) (emphasis added). In Shaw v. Delta Air Lines, Inc.,463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), the *Page 1387 
Supreme Court stated that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." However, it should be noted that the Court also stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100, n. 21,103 S.Ct. at 2901, n. 21.
The Supreme Court has recognized in Mackey v. LanierCollection Agency Service, Inc., 486 U.S. 825,108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), that there are two types of civil actions which may be brought against ERISA plans: (a) enforcement actions brought by specified ERISA entities to obtain certain specified relief which includes the recovery of benefits under the plan (see 29 U.S.C. § 1132) and (b) "lawsuits against ERISA plans for run-of-the-mill state-lawclaims such as unpaid rent, failure to pay creditors, or eventorts committed by an ERISA plan." Mackey, 486 U.S. at 833,108 S.Ct. at 2187 (footnotes omitted) (emphasis added). The Supreme Court noted that although this second type of civil action obviously affects and involves ERISA plans and their trustees, it is not preempted by ERISA and involves claims brought by non-ERISA entities. Mackey, 486 U.S. at 833, n. 8,108 S.Ct. at 2187, n. 8.
ERISA preempts a state law cause of action brought by an ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits. Pilot Life InsuranceCo. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39
(1987). When a health care provider brings a cause of action as an assignee of the insured, it stands in the shoes of the insured and may pursue only whatever rights the insured enjoyed under the provisions of the plan. Memorial Hospital System v.Northbrook Life Insurance Co., 904 F.2d 236 (5th Cir. 1990).
However, in the present case, Brookwood brings its cause of action under its status as a third-party health care provider that was injured by the misrepresentation that the insured was covered for the recommended procedures, rather than as an assignee of the insured. The issue is whether Brookwood's state law claims are preempted by ERISA.
In Memorial Hospital System, 904 F.2d at 245, the Fifth Circuit discerned that preemption of state law claims have at least two unifying characteristics:
 "(a) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (b) the claims directly affect the relationship among the traditional ERISA entities — the employer, the plan and its fiduciaries, and the participants and beneficiaries."
(Footnotes omitted.)
In Sommers Drug Stores Co. Employee Profit Sharing Trust v.Corrigan Enterprises, Inc., 793 F.2d 1456, 1467 (5th Cir. 1986), the Fifth Circuit made the following statement:
 "[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities — the employer, the plan, the plan fiduciaries, and the beneficiaries — than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan."
Congress's purpose in enacting ERISA was to advance the interests of the participating employees and their beneficiaries in the employee benefit plans and to preserve the benefits as described and defined in the plan. Firestone Tire Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948,103 L.Ed.2d 80 (1989).
There are two lines of authority regarding whether ERISA preempts the state law claims of a third-party health care provider that brings a cause of action seeking damages from the insurance company due to negligent misrepresentations of coverage by the insurance company. See The Meadows v. EmployersHealth Insurance, 826 F. Supp. 1225 (D.Ariz. 1993).
One line of authority which decided against preemption by ERISA did so because the court could not see how insulating plan fiduciaries from the consequences of their own misrepresentations to third-party health care *Page 1388 
providers furthered any of ERISA's goals. In these cases, the third-party health care providers were seeking damages from the insurers based on the allegation that if the insurer had not negligently misrepresented coverage, the health care provider would not have accepted the financial risk of providing the health care. The cases in this line of authority include:
 (1) Albert Einstein Medical Center v. Action Mfg. Co., 697 F. Supp. 883 (E.D.Pa. 1988).
 (2) HCA Health Serv. of the Midwest, Inc. v. Catrambone, 682 F. Supp. 381, 383 (N.D.Ill. 1988).
 (3) Memorial Hospital System v. Northbrook Life Insurance Co., 904 F.2d 236 (5th Cir. 1990).
 (4) Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc., 944 F.2d 752, 754-55
(10th Cir. 1991).
 (5) Forest Springs Hospital v. Illinois New Car Truck Dealers Ass'n Employees Insurance Trust, 812 F. Supp. 729, 732 (S.D.Tex. 1993).
 (6) Jefferson Parish Hospital District No. 2 v. Central States, Southeast and Southwest Areas Health Welfare Fund, 814 F. Supp. 25 (E.D.La. 1993).
 (7) The Meadows v. Employers Health Insurance, 826 F. Supp. 1225 (D.Ariz. 1993).
Memorial Hospital System, 904 F.2d 236, involved a third-party health care provider that brought a cause of action under its independent status as a third-party health care provider for damages for misrepresentation of insurance coverage. In its opinion, the Fifth Circuit made the following statement:
 "If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of nonpayment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage."
Memorial Hospital System, 904 F.2d at 246 (emphasis added).
The court in The Meadows, 826 F. Supp. at 1233, made the following statements:
 "ERISA is thus a 'bargain.' Participants and beneficiaries received the protections of ERISA in exchange for giving up certain rights to sue under previous federal and state law. It is understandable and expected that an insurer would use ERISA preemption to avoid state claims of participants and beneficiaries or their assignees. This is part of the 'bargain.' However, plan fiduciaries should not be able to use ERISA to shield themselves from the consequences of their actions toward other entities who are 'not a party to this bargain.' It is inappropriate, and an unlikely congressional aim, to place the risk of nonpayment upon the third-party provider when it was the benefit plan which misrepresented to the provider the patient's coverage."
(Citations omitted.)
In conclusion, the court in The Meadows,826 F. Supp. at 1234, stated:
 "Where, as here, the health care provider (1) sues independently and not as an assignee of a beneficiary; (2) does not claim any benefits or rights under the ERISA plan; and (3) the alleged misrepresentations concern the existence and not the extent of coverage, any effect upon the ERISA plan or its trustees is outweighed by the policy concerns discussed above."
(Footnotes omitted.)
The policy concerns discussed in this case focused on the fact that if a health care provider was precluded from recovering from a benefit plan for misrepresentation of coverage it would (1) defeat the purpose of ERISA, and (2) impinge upon the accessibility of medical services to all Americans because *Page 1389 
health care providers would become wary of providing medical service without a deposit or a delay to confirm coverage. (See The Meadows, 826 F. Supp. at 1232.)
In the other line of authority, the courts have held that ERISA preempts the non-derivative claims of a third-party health care provider because a provider's claims, no matter how they are characterized, are claims for benefits under an ERISA plan. The courts which follow this line of authority are troubled by the fact that (1) an award for damages would leave fewer funds to pay the claims of beneficiaries; and (2) costs would be increased if these claims are allowed because it would subject the ERISA plan to inconsistent state laws. The cases in this line of authority include:
 (1) Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir. 1991).
 (2) Barnes Hospital v. Sanus Passport/Preferred Services, Inc., 809 F. Supp. 725 (E.D.Mo. 1992).
(3) St. Mary Medical Center v. Cristiano,724 F. Supp. 732 (C.D.Cal. 1989).
 (4) National Alcoholism Programs, Inc. v. Palm Springs Hospital Employee Benefit Plan,825 F. Supp. 299 (S.D.Fla. 1993). (The district court granted a motion to dismiss the count in National's complaint which involved a claim under the Florida Unfair Trade Practices Act because the court found that ERISA preempted National's claim under the Florida Unfair Trade Practices Act. Interestingly, the district court declined to dismiss National's promissory estoppel claim.)
In Cromwell, 944 F.2d 1272, 1276, the court discussed preemption in ERISA cases and stated the following:
 "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.
 ". . . [Cromwell's] state law claims are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan."
(Citations omitted.)
The dissent in Cromwell, 944 F.2d at 1283, refers to the three factors which should be considered when determining whether a state law cause of action "falls within the 'remote and peripheral' exception" of ERISA's broad preemption. These three factors were set out in Firestone Tire Rubber Co. v.Neusser, 810 F.2d 550, 555-56 (6th Cir. 1987). These factors are: (a) examine "whether the state law represents a traditional exercise of state authority," (b) see whether the state law " 'affects relations among the principal ERISA entities — the employer, the plan, the plan fiduciaries, and the beneficiaries,' " and (c) the effects of the state law on the plan.
In its order granting the motion for summary judgment in favor of Celtic, the trial court found that Brookwood's claims were preempted by ERISA. The trial court apparently relied onIngersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478,112 L.Ed.2d 474 (1990), to support its determination.
The facts of Ingersoll-Rand are as follows: Ingersoll-Rand fired McClendon, and McClendon filed a wrongful discharge action in state court. The Supreme Court determined that ERISA preempted the cause of action. The Supreme Court stated the following at 498 U.S. at 140, 111 S.Ct. at 483:
 "[I]n order to prevail, [McClendon] must plead, and the court must find, that an ERISA plan exists and [Ingersoll-Rand] had a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan."
We would note that Ingersoll-Rand dealt with two principal ERISA entities, the employer and a beneficiary, and the cause of action filed by the employee/beneficiary affected the relations between the two principal ERISA entities. In such cases, courts are more likely to find that the state law "relate[s] to" the benefits plan and is, thus, preempted by ERISA. See Sommers Drug *Page 1390 Stores Co. Employee Profit Sharing Trust, 793 F.2d at 1467.
The present case involves a third-party health care provider seeking to recover damages for the misrepresentations of coverage made by the insurer. This fact distinguishes the present case from Ingersoll-Rand.
In any event, after carefully considering this issue, this court is of the opinion that the better view is that adopted by the line of cases which decided against preemption by ERISA. It was the agent of the insurance company that represented to the third-party health care provider (Brookwood) that there was insurance coverage for the recommended procedure when, in fact, no such coverage existed.
Brookwood does not seek benefits under the plan. Brookwood now seeks damages from Celtic because the agent for Celtic represented that there was insurance coverage and Brookwood relied on that representation when it admitted Beringer to its hospital.
In view of the above, the judgment is reversed and the cause remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.