On December 29, 2005, Singer Asset Finance Company, L.L.C. ("Singer"), sued Connecticut General Life Insurance Company ("CGLIC"), alleging breach-of-contract, conversion, and negligence claims. CGLIC answered and filed motions, pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss Singer's claims.[1] The trial court granted CGLIC's motions and dismissed Singer's claims; with respect to the negligence claim, the trial court awarded CGLIC an attorney fee and costs pursuant to the Alabama Litigation Accountability Act ("ALAA"), § 12-19-270 et seq., Ala. Code 1975.
Singer appeals, arguing that the dismissal of its claims against CGLIC was erroneous because, it says, it can prove a set of circumstances that would entitle it to relief under each claim. Singer further argues that the trial court's order awarding CGLIC an attorney fee and costs was erroneous.
We are also releasing today an opinion in another appeal by Singer; in that appeal, Singer sought review of a summary judgment against it on Singer's claim against the estate of Richard H. Rutherford. See Singer Asset Fin. Co. v. Estateof Rutherford, [Ms. 2050500, June 1, 2007] ___ So.2d ___ (Ala.Civ.App. 2007). The facts underlying both appeals are essentially the same and are undisputed.
Richard H. Rutherford was injured in an Atlantic City, New Jersey, casino. In settlement of his claim against the casino, he agreed in 1985 to a structured settlement with North River Insurance Company ("North River"), the casino's insurer. The settlement agreement provided, among other things, that Rutherford would receive five periodic payments according to the following schedule:
 $15,000.00 payable on April 1, 1990;
 $15,000.00 payable on April 1, 1995;
 $20,000.00 payable on April 1, 2000;
 $35,000.00 payable on April 1, 2005; and
 $50,000.00 payable on April 1, 2010.
In accordance with the settlement agreement, North River purchased a guaranteed investment annuity contract from CGLIC in order to fund its obligation to make the periodic payments to Rutherford. North River paid CGLIC a lump-sum payment, and in return, CGLIC obligated itself to North River to make the annuity payments to the payee, Rutherford, according to the terms of the settlement agreement between North River and Rutherford.
According to the settlement agreement between Rutherford and North River — and as provided in the annuity contract between CGLIC and North River — if Rutherford died before the final proceeds of the settlement were disbursed, then CGLIC was to pay the commuted value of any remaining proceeds to Rutherford's named beneficiary or to Rutherford's estate. The named beneficiary of the annuity contract was Rutherford's wife, Sue. Sue Rutherford died in 1996.
On April 30, 1998, Rutherford assigned his right to receive two of the periodic payments to Mutual BanCorp in return for an immediate cash payment of $23,421. The assigned payments were the April 1, 2000, payment for $20,000, and the April 1, *Page 379 
2005, payment for $35,000. On the same day, Mutual BanCorp provided written notice of the assignment and a change of the payee's address to CGLIC and North River. On May 11, 1998, Mutual BanCorp assigned to Singer its right to receive the two periodic payments. CGLIC made the April 1, 2000, payment of $20,000 to Singer. Before the April 1, 2005, payment became due, however, Rutherford died on May 24, 2002.
On April 2, 2003, almost a year after Rutherford's death, Roy F. King, Jr., was appointed as the administrator of Rutherford's estate (King is hereinafter referred to as "the administrator"). Singer alleges that it did not have knowledge of Rutherford's death or of the probate of Rutherford's estate until approximately November 9, 2004. Some time after November 9, 2004, Singer also learned that CGLIC had previously made a single lump-sum payment of $46,704.65 — representing the commuted value of the remaining annuity payments — to the estate. On November 12, 2003, the administrator paid substantially all of the assets of the estate to Rutherford's son and sole heir, Christopher Rutherford.
 I. Standard of Review
When a complaint is dismissed pursuant to Rule 12(b)(6), the following standards apply:
 "`"On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him or her] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he or she] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."'"
Culver v. Lang, 935 So.2d 475, 477 (Ala.Civ.App. 2006) (quoting Marks v. Tenbrunsel, 910 So.2d 1255, 1258
(Ala. 2005)) (internal citations omitted). The annuity contract between CGLIC and North River was attached to Singer's complaint, along with copies of the settlement agreement between North River and Rutherford, the "Notice of Assignment" from Mutual BanCorp to both CGLIC and North River, and a letter from CGLIC in response to Mutual BanCorp's "Notice of Assignment." Therefore, those documents became part of Singer's pleadings pursuant to Rule 10(c), Ala. R. Civ. P.
 II. Breach of Contract
As the only payee named in the annuity contract between CGLIC and North River, Rutherford was the third-party beneficiary of the annuity contract. Singer argues that, as the assignee of Rutherford's assignee, it stepped into Rutherford's shoes and became the third-party beneficiary of the annuity contract insofar as it obligated CGLIC to pay Rutherford $35,000 on April 1, 2005.
 "`[I]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to his incidental, benefit.' Mills v. Welk, 470 So.2d 1226, 1228
(Ala. 1985). To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract *Page 380 
was breached.' Sheetz, Aiken Aiken, Inc. v. Spann, Hall, Ritchie, Inc., 512 So.2d 99, 101-02
(Ala. 1987)."
McGowan v. Chrysler Corp., 631 So.2d 842, 848
(Ala. 1993).
CGLIC argues that because Rutherford did not have the right to alter the payee of the contract, he therefore had no right to obligate CGLIC to make any of the payments due under the annuity contract to his assignee. This argument assumes that because the third-party beneficiary could not change the named payee, then the third-party beneficiary could not assign its own right to receive payment so long as it was the named payee. It was this right to receive payment that Rutherford assigned, as a third-party beneficiary, not the right to alter the terms of the agreement. Mutual BanCorp — the original assignee — did not request that the payee be changed, it requested only that the payment address be changed, and that North River and CGLIC be on notice that Rutherford had assigned his right to receive the payments. Although Rutherford had no right to change the terms of the annuity contract, including the right to change the payee, there is no language in the annuity contract that prevented Rutherford from assigning whatever interests or rights he had under the contract, i.e., the right to receive the payments from CGLIC, so long as he was named as the payee.
When a party assigns its rights under a contract to an assignee, the assignee steps into the shoes of the assignor and possesses all the rights the assignor originally possessed, but nothing more. Green Tree Fin. Corp. v. Channell],825 So.2d 90, 95 (Ala. 2002); and Broadwell v. Imms, 14 Ala.App. 437, 441, 70 So. 294, 295 (1915). See also OcwenLoan Servicing, LLC v. Washington, 939 So.2d 6 (Ala. 2006); Brookwood Med. Ctr. v. Celtic Life Ins. Co.,637 So.2d 1385 (Ala.Civ.App. 1994).
In Georgia Power Co. v. Partin, 727 So.2d 2
(Ala. 1998), the Alabama Supreme Court repeated the rule that a third-party beneficiary may not claim the benefits of a contract without being bound by the limitations of the contract:
 "It is a well-established principle of Alabama law that a contract made for the benefit of a third person may, at his election, be accepted and enforced by him. Michie v. Bradshaw, 227 Ala. 302, 149 So. 809
(1933). However, — W he claims the benefits [of the contract], he also assumes the burdens.' Michie, 227 Ala. at 308, 149 So. at 814. See, also, Ex parte Dyess, 709 So.2d 447
(Ala. 1997) (nonsignatory plaintiff claiming the benefit of a contract as a third-party beneficiary is subject to arbitration agreement within that contract). `The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. "The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract."' Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd., 635 F.Supp. 1503, 1505 (S.D.Fla. 1985), quoting Trans-Bay Engineers Builders, Inc. v. Hills, 551 F.2d 370, 378 (D.C. Cir. 1976). See, also, Dunn Constr. Co. v. Sugar Beach Condominium Ass'n, Inc., 760 F.Supp. 1479 (S.D.Ala. 1991); Lee v. Grandcor Medical Systems, Inc., 702 F.Supp. 252, 255 (D.Colo. 1988) ('A third party beneficiary must accept a contract's burdens along with its benefits.')."
727 So.2d at 5. Regarding periodic payments, the annuity contract states:
 "PAYMENT PROVISIONS
 "We[, CGLIC,] agree to make the payments set forth in the Schedule. These payments mil be made to the *Page 381 
Payee named in the Schedule [i.e., Rutherford], if he is living on the date that the payment is due. If not, we will pay the Beneficiary named in the Schedule. If the Beneficiary dies before all payments have been made, we mil pay the estate of the last surviving Payee. If you[, North River,] have not chosen a Beneficiary, then we will pay you, the Owner.
 "there is no Payee or Beneficiary alive, we will pay any remaining guaranteed payments in a lump sum. The amount of the lump sum will be the present value of the remaining payments, figured at the rate of interest on which the premium was based. Except as set forth above, neither you, nor any Payee or Beneficiary, shall have the right to demand payment in a lump sum of the present value of future payments."
(Emphasis added.)
Singer, the assignee, has no greater rights than Rutherford, the assignor, had under the contract. See Green Tree, supra. According to the express terms of the annuity contract, the scheduled payments were to be made to Rutherford, the payee. If Rutherford died, however, and the beneficiary was no longer living, then a lump-sum commuted payment of any remaining amounts due under the schedule agreed to in the annuity contract was to be made to Rutherford's estate. Consequently, Rutherford's right to receive payments under the annuity contract no longer existed after his death.
Under the annuity contract, Rutherford was the payee; Rutherford's wife was the beneficiary. Rutherford's wife predeceased him. Thus, after Rutherford's death in 2002, there was no payee or beneficiary alive and CGLIC performed its obligation under the express terms of the annuity contract by making a lump-sum payment to Rutherford's estate.[2]
Rutherford might have obligated himself to ensure payment to Singer of the April 1, 2000, payment (which had already been paid to Singer), and the April 1, 2005, payment of $35,000, but that obligation was personal to Rutherford and was not an obligation of CGLIC under its annuity contract with North River. We do not hold that Singer has no right to the money in question. Instead, we hold that if Singer, as Rutherford's assignee, has a right to the scheduled payment of $35,000 that was due to be paid to Rutherford on April 1, 2005 — or a right to some discounted final lump-sum portion of that payment — that right arises against some entity other than CGLIC.
Because CGLIC performed its obligations under the annuity contract with North River, Singer can prove no set of facts under which it would be entitled to recover against CGLIC on its breach-of-contract claim. The trial court correctly dismissed the breach-of-contract claim.
 III. Conversion "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property *Page 382 
. . . . Conversion requires `a wrongful exercise of dominion over property in exclusion or defiance of a plaintiffs rights, where said plaintiff has . . . the immediate right to possession.' Empiregas of Gadsden, Inc. v. Geary, 431 So.2d 1258, 1260
(Ala. 1983).
 "Generally, an action will not lie for the conversion of cash. However, if the cash at issue is `specific money capable of identification,' claims of conversion may be appropriate."
Covington v. Exxon Co., U.S.A., 551 So.2d 935, 938
(Ala. 1989).
Singer contends that CGLIC wrongly interfered with property that belonged to Singer by virtue of Singer's being the assignee of Rutherford's right to receive a payment of $35,000 on April 1, 2005. Specifically, Singer argues that CGLIC converted $35,000 that, Singer says, CGLIC was obligated to pay Singer under the terms of the assignment contracts between Rutherford and Mutual BanCorp, and then between Mutual BanCorp and Singer. That argument overlooks the fact that CGLIC was not a party to the assignment contracts. As we have previously determined, CGLIC fully performed its obligations under the contract to which it was a party — the annuity contract with North River — by paying a commuted value of the undisbursed proceeds of the annuity to Rutherford's estate.
Therefore, Singer can prove no set of facts under which CGLIC's payment to the estate was "wrongful." Because we hold that CGLIC's actions were not "wrongful," we do not discuss whether an action for conversion of a cash payment would lie in this particular case. The trial court correctly dismissed Singer's conversion claim.
 IV. Negligence
The statutory limitations period for filing a negligence action is two years. § 6-2-38, Ala. Code 1975; Boyce v.Cassese, 941 So.2d 932 (Ala. 2006). The statute of limitations begins to run from the time the plaintiffs cause of action accrues, and there is no "discovery rule" for negligence claims that would toll the running of the statute of limitations from the time the cause of action was "discovered" by the plaintiff. See id.; Henson v. Celtic Life Ins.Co., 621 So.2d 1268, 1274 (Ala. 1993); and Desouza v.Lauderdale, 928 So.2d 1035 (Ala.Civ.App. 2005).
Singer does not argue that its negligence claim accrued less than two years before the filing of its complaint against CGLIC. Nor does it argue that a discovery rule should apply to its negligence claim. Rather, citing Russell PetroleumCorp. v. Environ Products, Inc., 333 F.Supp.2d 1228
(M.D.Ala. 2004), Singer argues for the first time on appeal that a fraudulent concealment by CGLIC prevented Singer from learning of its negligence claim against CGLIC, and, therefore, Singer says, that fraudulent concealment tolled the running of the statute of limitations. Id. (citing Exparte Floyd, 796 So.2d 303, 307 (Ala. 2001)).
This court does not consider issues raised for the first time on appeal. Somers v. McCoy, 777 So.2d 141, 143
(Ala.Civ.App. 2000) (citing Andrews v. Merritt Oil Co.,612 So.2d 409 (Ala. 1992); and S.W.M. v. D.W.M.,723 So.2d 1271 (Ala.Civ.App. 1998)). Our review "is restricted to those arguments considered by the trial court." Somers,777 So.2d at 143 (citing Lyons v. Porter,539 So.2d 298 (Ala.Civ.App. 1988)). Because there is no indication in the record that Singer raised the issue of fraudulent concealment in its complaint or its amended complaint, in its response to CGLIC's motion to dismiss, or in its postjudgment motions, this court will not consider the issue now. The trial court *Page 383 
correctly dismissed Singer's negligence claim.
 V. Attorney Fees
Singer argues that the trial court's award of "reasonable attorney's fees" and costs to CGLIC on the negligence claim was erroneous. Pursuant to the ALAA, § 12-19-272(c), Ala. Code 1975, the trial court found that Singer brought its negligence claim "without substantial justification," and it awarded CGLIC $2,598.48 for attorney fees and costs.
The trial court specifically held that Singer had sufficient facts and evidence before it so that Singer knew, or should have known, that the negligence claim was barred by the statute of limitations, and that the claim was, therefore, asserted "without substantial justification" pursuant to the ALAA. According to the ALAA, a trial court's award of attorney fees and costs under § 12-19-272(c) is within the trial court's sound discretion. § 12-19-273, Ala. Code 1975; Williamsv. Capps Trailer Sales, Inc., 607 So.2d 1272
(Ala.Civ.App. 1992). However, when a trial court finds that an action, claim, or defense was asserted "without substantial justification" because it was groundless in law, as opposed to groundless in fact, the trial court's determination will be reviewed by the appellate courts without a presumption of correctness. Shealy v. Golden, 959 So.2d 1098
(Ala. 2006); Morrow v. Gibson, 827 So.2d 756
(Ala. 2002). The trial court's determination that Singer's negligence claim was time-barred was a legal conclusion, and therefore the presumption of correctness will not apply to our review of the trial court's determination. See Morrow, supra.
Even without affording the trial court's determination a presumption of correctness, we hold that, pursuant to § 12-19-273, Ala. Code 1975, the trial court acted within its discretion in awarding the attorney fees and costs to CGLIC. A review of the record supports the trial court's determination that Singer knew, or should have known, that the negligence claim was time-barred and that it was, therefore, brought "without substantial justification."
A cause of action for negligence accrues as soon as the plaintiff is entitled to maintain the cause of action. Kochv. State Farm Fire Cos. Co., 565 So.2d 226
(Ala. 1990). Singer's negligence cause of action accrued, if at all, on November 12, 2003, when CGLIC paid the commuted death benefit to the estate; however, Singer did not file its complaint until December 29, 2005. Therefore, Singer should have realized that its negligence action was time-barred. Singer did not plead or argue any exception to the statute of limitations. See Williams, supra.
 VI. Conclusion
For the aforementioned reasons, the judgment of the Jefferson Circuit Court dismissing Singer's claims against CGLIC and awarding attorney fees and costs to CGLIC pursuant to the ALAA is hereby affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
[1] Singer's original complaint alleged only a claim of negligence against CGLIC, but it included other claims against other defendants. Singer subsequently amended its complaint to include claims of breach of contract and conversion against CGLIC. The trial court dismissed all of Singer's claims against CGLIC and made the order final pursuant to Rule 54(b), Ala. R. Civ. P. Therefore, this appeal deals only with Singer's claims against CGLIC.
[2] The record includes a copy of a letter written by Rutherford on April 30, 1998, to North River and CGLIC, requesting that the named beneficiary under the annuity contract be changed from his wife, Sue Rutherford, then deceased, to his estate. The record does not reflect whether this letter was sent to or received by either CGLIC or North River. However, regardless of whether the letter was sent or received, or whether CGLIC or North River agreed to change the named beneficiary from Sue Rutherford to the Rutherford estate, the contract itself required that the lump-sum payment be made to the Rutherford estate. *Page 384